UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
EROS ENTERTAINMENT, INC., et al.,

　　　　　　　　Plaintiffs,

　　　　- against -

DIGITAL ENTERTAINMENT, INC., et al.,

　　　　　　　　Defendants.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

99 CV 7075 (ERK)

　　　On November 3, 1999, plaintiffs Eros Entertainment, Inc. and Eros International Ltd.

(collectively, "Eros") commenced this action against defendants Digital Entertainment Inc.

("DEI"), Sandish Mann and Harwinder Bisla, individually and d/b/a Digital Entertainment

(collectively, the "Digital defendants"),[1] alleging violations of the copyright and trademark laws,

17 U.S.C. §§ 102, 106, 504, and 505, in connection with the reproduction, sale, marketing,

distribution, or display of unauthorized illegal copies of plaintiffs' motion pictures.

　　　On February 10, 2002, the district court granted summary judgment in favor of plaintiffs,

finding that the Digital defendants had infringed on plaintiffs' copyrights by manufacturing and

distributing two song compilations in DVD format - - "Welcome '99" and "Main Hoon Amitabh

- The Man, The Actor, The Legend" ("Main Hoon Amitabh") - - which contained clips from

---

　　　[1] The action originally included claims against several distributors of these alleged
counterfeit DVDs, including 74th Street Audio & Video, Inc. ("74th Street"), Bollywood Music,
Inc. ("Bollywood Music"), and several individual owners and proprietors of these retail stores
(collectively, the "retail defendants"). Those claims were also the subject of this Court's
November 2001 Report and Recommendation, in which the Court recommended granting
summary judgment in favor of plaintiffs. The question of damages owed by these retail
defendants was subsequently settled and is not an issue here. The claims against these
defendants were dismissed with prejudice in or around December 2002.

various Eros films.[2]  On June 19, 2002, the court granted summary judgment on plaintiffs' claims

of infringement stemming from defendants' unauthorized distribution of the Eros film "Hote

Hote Pyar Ho Gaya" ("Hote Hote").  Presently pending before this Court on a referral from the

district court is plaintiffs' motion for statutory damages, attorneys' fees and costs from the three

Digital defendants.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

As set forth in greater detail in this Court's Report of November 1, 2001, plaintiffs are

engaged in the manufacture, reproduction, importation, marketing, distribution, display, and sale

of Indian films, in the form of 35mm theater productions, videocassettes, VCDs, and DVDs.

(Pls.' 56.1 Stmnt #1 ¶¶ 1–2).  Eros acquires the films through assignment agreements from

producers in India and then transfers the films to a distributor who manufactures the DVDs and

---

[2] The DVD compilation "Main Hoon Amitabh" consists of songs and portions of dialogue taken the Eros film titles "Major Saab," "Sholay," "Lal Baadshah," "Muqaddar Ka Sikandar," "Khuda Gawah," "Sharaabi," "Ram Balram," "Zanjeer," " Mr. Natwarlal," "Laawaris," "Trishul," and "Deewar."  (Pls.' Notice of Motion for Summary Judgment filed January 5, 2001, Schedule A ("Schedule A"); Mann Aff. ¶ 24).  Similarly, "Welcome '99" was compiled from the Eros film titles "Soldier," "Hum Aapke Dil Mein Reht Hain," "Satya," "Doli Saja Ke Rakhna," "Dil Se," "Ziddi," "Major Saab," "Ghulam," "Lal Baadshah," "Kudrat," "Jeans," and "China Gate." (Schedule A; Mann Aff. ¶ 25).

[3] Unless otherwise noted, the facts set forth herein are derived from the testimony of witnesses during the preliminary injunction hearing, from plaintiffs' Statement of Undisputed Facts in Support of Plaintiffs' Motion for Summary Judgment against the 74th Street and Bollywood Music defendants ("Pls.' 56.1 Stmnt #1"), from Plaintiffs' Statement of Undisputed Facts in Support of Plaintiffs' Motion for Summary Judgment against the Digital defendants ("Pls.' 56.1 Stmnt #2"), from the Statement of Undisputed Facts submitted by the 74th Street and Bollywood Music defendants ("Defs.' 56.1 Stmnt") or from the Fed. R. Civ. P. 56.1 Statement submitted by the Digital defendants ("Digital 56.1 Stmnt").

videocassettes. (8/29/00 Tr. at 29–30).[4] The films are distributed in theaters across North America and subsequently released in DVD, videocassette, or VCD format. (Id. at 30–31). Once the films are released, Eros files applications for copyright certificates on each film they have acquired. (Id. at 31–32). The films and the copyrights are owned by Eros' head office, Eros International, Ltd. of London, and there is a written agency agreement between Eros Entertainment and Eros International. (Id. at 30; 9/8/00 Tr. at 147).

Plaintiffs distribute their products with the Eros name and logo placed on the product packaging, and with a warning advising of the Eros copyright. (Pls.' 56.1 Stmnt #1 ¶ 2). Despite plaintiffs' efforts to protect their copyrights, "film pirates" have developed the technology to reproduce and sell "illegal" copies of plaintiffs' films without authorization. (Pls.' 56.1 Stmnt #1 ¶ 3; Am. Compl. ¶ 24).[5]

Digital Entertainment Inc. ("DEI"), a California corporation, markets, sells, and distributes Indian films on DVD throughout the United States and Canada. (Affidavit of Sandish Mann, dated Oct. 6, 2000 ("Mann Aff."), ¶ 2). Defendant Mann was the President of DEI, and defendant Bisla was a major shareholder and Vice President of Marketing for DEI's products in the United States. (Shahparast Aff. #2 ¶¶ 9–11).[6] Mann and Bisla personally conducted DEI's day to day business operations. (Id.)

_____

[4] Citations to "Tr. at " preceded by the date refer to pages in the preliminary injunction hearing in this matter that was held over a period of several days.

[5] Citations to "Am. Compl." refers to Plaintiff's Amended Complaint, filed on November 22, 1999.

[6] "Shahparast Aff. #2" refers to the Affidavit of Behram Shahparast, Vice President of Marketing and Distribution for Eros Entertainment, Inc., dated November 3, 2000, submitted in opposition to the Digital Defendants' Motion to Dismiss.

In October 1998, DEI entered into a Distribution Agreement with Eros, in which DEI acquired the right to distribute approximately 100 Eros film titles in DVD format over an initial three year term with a three year option to renew (the "Distribution Agreement"). (Mann Aff. ¶¶ 1, 8–10). In April 1999, a contract dispute developed and Eros terminated the Distribution Agreement, demanding that DEI return certain products and equipment to Eros. (Id. ¶¶ 11–13).

Eros commenced a lawsuit against the Digital defendants in United States District Court in the Central District of California in June 1999, alleging that the Digital defendants had infringed the copyrights to the approximately 100 films that DEI had acquired from Eros. (Id. ¶ 16). That action was stayed while the parties proceeded with an action in the High Justice Court of England as provided for in the Distribution Agreement. (Id. ¶ 17; Drangel Decl. Ex. 12 ¶ 17.14).[7]

On November 4, 1999, Eros executed a seizure warrant at the 74th Street and Bollywood Music retail stores. (8/29/00 Tr. at 66–67). In total, Eros recovered 1003 counterfeit or "pirated" videocassettes, 240 counterfeit or "pirated" DVDs, 68 VCRs, and 9 duplicating machines. (Shahparast Aff. #2 ¶¶ 21, 27, Exs. H, K). These seized DVDs contained the "DEI" logo along with DEI's name, address, and a description of the films, making it appear as if DEI was the copyright holder of the films. (Pls.' 56.1 Stmnt #2 ¶¶ 25–26). In addition to seizing counterfeit DVDs of Eros films, plaintiffs seized multiple DVDs of "Main Hoon Amitabh" and "Welcome '99." (Id. ¶ 24). "Main Hoon Amitabh" is a compilation of clips of musical performance scenes, dramatic scenes, and dialogue taken primarily from relatively old, classic films, and "Welcome

---

[7] Citation to "Drangel Decl." refers to the Declaration of Jason M. Drangel, dated April 14, 2003.

'99" is a compilation of musical performances and scenes taken from twelve of plaintiffs' best motion pictures released in 1999. (Id. ¶ 14).

Eros, which holds the copyrights to a number of the films from which the compilations are taken,[8] filed this action on November 1, 1999, asserting in their complaint that defendants Mann, Bisla, and DEI have engaged in extensive piracy of plaintiffs' copyrighted films. Eros alleges that the defendants were never authorized to reproduce, manufacture, market or distribute any of Eros' films without the Eros logo, name, address, trademark, artwork or copyright warnings. (Pls.' 56.1 Stmnt #2 ¶¶ 23, 25–26). Plaintiffs also claim that the compilations "Main Hoon Amitabh" and "Welcome '99" were produced by DEI without authorization. (Id. ¶ 23). Plaintiffs allege that not only was DEI not authorized to produce these compilations which include clips from films owned by parties other than Eros,[9] but a number of the Eros titles from which portions of the compilations were derived were not among the titles which DEI was authorized to distribute. (Id.) Plaintiffs allege that defendants' actions were knowing and intentional and robbed plaintiffs of their right to prepare derivative works from the films they own. (Id. ¶¶ 14, 32). This also caused injury to plaintiffs' ability to market the original films since consumers could purchase one compilation that incorporates the best scenes from all of these other films. (Id.)

---

[8] "Main Hoon Amitabh" and "Welcome '99" consist of 22 Eros titles altogether. (Schedule A; Mann Aff. ¶¶ 24–25; see also footnote 2, supra). Plaintiffs submitted proof of copyright for 18 of these 22 films.

[9] Specifically, the compilations contain film clips from films owned by third parties, potentially exposing plaintiffs to suits by these third parties, and creating confusion in the customers' minds as to the origin and ownership of the films depicted in the compilations. (Aff. of Behram Shahparast, dated August 11, 2000, submitted in support of Plaintiffs' motion for summary judgment against the Digital defendants ("Shahparast Aff. #3" ¶ 28).

By Notice of Motion, dated August 11, 2000, plaintiffs moved for summary judgment and entry of a permanent injunction against the Digital defendants, claiming that the Digital defendants violated plaintiffs' copyrights by manufacturing and distributing "Welcome '99" and "Main Hoon Amitabh" without Eros' permission and without Eros' copyright notices, logos, and artwork. Thereafter, in a motion dated September 5, 2000, plaintiffs moved for permission to file a second amended complaint against the Digital defendants, seeking to add claims of copyright infringement against DEI based on DEI's unauthorized manufacture of DVDs of the film "Hote Hote," a film to which Eros also claimed copyright ownership, including the exclusive right to distribute "Hote Hote" in theatres, videocassettes, video compact disc, digital versatile disc, and other formats in Canada and the United States. (Shahparast Aff. #5 ¶ 4).[10]

These motions, among others, were subsequently referred to the undersigned to prepare a Report and Recommendation. On November 1, 2001, this Court recommended that: 1) plaintiffs' motion to file a second amended complaint adding "Hote Hote" should be granted; and 2) plaintiffs' motion for summary judgment seeking damages and permanent injunctive relief should be granted as to the compilations "Welcome '99" and "Main Hoon Amitabh." In recommending that summary judgment be granted as to "Welcome '99" and "Main Hoon Amitabh," this Court rejected the Digital defendants' claim that the compilations were created from films which DEI obtained from Eros under the Distribution Agreement. (Nov. 2001 Rept. at 70–71). This Court further found that the Distribution Agreement did not authorize DEI to create entirely new works out of copyrighted films owned by Eros in the absence of Eros' written

---

[10] "Shahparast Aff. #5" refers to the Affidavit of Behram Shahparast, dated September 5, 2000, submitted in support of plaintiffs' motion to amend and for a temporary restraining order against the Digital defendants.

consent. (Id.; see Shahparast Aff. #2 ¶ 7). This Court further disagreed with the Digital defendants' assertion that the Distribution Agreement governs this dispute, finding that the Agreement did not provide a mechanism to restrain DEI's illegal distribution of unauthorized Eros products. (Nov. 2001 Rept. at 39, 65–69; see also Shahparast Aff. #2 ¶ 7).

As for "Hote Hote," the Digital defendants disputed Eros' claim to copyright ownership in the film and argued that they had obtained the right to reproduce and distribute copies of "Hote Hote" directly from the film's producer. (Bisla Aff. ¶¶ 13–14).[11] An application had been filed by Eros with the United States Copyright Office on July 2, 1999 to obtain the exclusive rights to "Hote Hote" (Shahparast Aff. #5 ¶ 5), but the application had not been finally determined at the time of the November 2001 Report. Accordingly, this Court recommended that a preliminary injunction issue to prevent defendants from further disseminating "Hote Hote" without authorization, but recommended that plaintiffs' motion for summary judgment be denied without prejudice to renew in the event that a Certificate of Registration was issued to Eros in the future. The Court's November 2001 Report and Recommendation was adopted by the district court on February 10, 2002.

By letter dated April 15, 2002, plaintiffs submitted additional Certificates of Copyright Registration for "Hote Hote" and a number of other Eros films not at issue here.[12] On May 8,

---

[11] "Bisla Aff." refers to the Affidavit of Harwinder Bisla, dated February 26, 2003, in response and opposition to plaintiffs' request for damages. Mr. Bisla, a defendant and former vice-president of DEI, is proceeding pro se in this action.

[12] During the course of executing the seizure warrants at the retail defendants' stores, a number of other Eros films were seized for which Certificates of Copyright Registration were not available at the time of plaintiffs' original motion for summary judgment, which was filed against both the Digital defendants and the retail defendants. Thus, in April 2002, plaintiffs submitted Certificates of Copyright Registration for "Hote Hote" and 23 other Eros films. (See

2002, this Court recommended that plaintiff's motion for summary judgment as to "Hote Hote" be granted. This recommendation was adopted on June 19, 2002.

Eros now moves for an award of statutory damages, attorneys' fees and costs against the Digital defendants based on its claims that defendants wilfully infringed plaintiffs' copyrights in the film "Hote Hote," and in the two compilations "Welcome '99" and "Main Hoon Amitabh."

## DISCUSSION

A. Statutory Damages for Copyright Infringement

Having established that the Digital defendants violated plaintiffs' copyrights, plaintiffs seek an award of statutory damages, attorney's fees and costs.

Damage awards in cases of copyright infringement are governed by Section 504(c)(1) of the Copyright Act. Section 504(c)(1) provides in relevant part:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum or not less than $500.00 or more than $20,000.00 as the court considers just.

17 U.S.C. § 504(c)(1). The statute itself and the cases in this circuit interpreting the statute have made it clear that the victim of a copyright infringement is entitled to choose between the actual damages suffered, plus any additional profits, or he may elect statutory damages to be awarded within certain specified limits. See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Inc., 996 F.2d 1366,

---

Table SA attached to the Court's Report and Recommendation, dated May 8, 2002 (the "May 2002 Report").

1380 (2d Cir. 1993) (permitting plaintiff to elect statutory remedy where damages were difficult

to ascertain); see also N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250 (2d Cir. 1992)

(noting that a copyright owner may elect statutory damages instead of other forms of monetary

relief); Engel v. Wild Oats, Inc., 644 F. Supp. 1089, 1091 (S.D.N.Y. 1986) (stating that the

"victim of a copyright infringement . . . may elect statutory damages to be determined, within

specified limits, 'as the court considers just'"); RSO Records, Inc. v. Peri, 596 F. Supp. 849, 862

(S.D.N.Y. 1984) (stating that "statutory damages cannot be expected to correspond exactly to

actual damages and [. . .] may exceed amount of documented damages"); Lauratex Textile Corp.

v. Allton Knitting Mills Inc., 519 F. Supp. 730, 732–33 (S.D.N.Y. 1981) (noting that statutory

damages are appropriate where actual damages are difficult to prove, and awarding statutory

damages of $40,000 where defendant's profits were $5,177).

Pursuant to this section, plaintiffs have elected to seek statutory damages instead of actual

damages and profits for their claims of copyright infringement, and move for an order granting

summary judgment awarding statutory damages. Since the court previously determined that

defendant infringed plaintiffs' copyrighted designs and granted summary judgment in plaintiffs'

favor, plaintiffs are entitled to an election of the statutory damage amount pursuant to Section

504(c)(1). Where a prevailing party elects statutory damages, the question of damages is not

required to be submitted to a jury, as statutory damages "may be awarded by the court in its

discretion." Oboler v. Goldin, 714 F.2d 211, 212–13 (2d Cir. 1983); see 17 U.S.C. §§ 504(a)(2),

(c). Thus, statutory damages are available in a case such as this where summary judgment has

been granted.

Plaintiffs further contend that since the defendant's infringement was willful, they are

entitled to an award of the maximum statutory damages allowed. The applicable statute, Section

504(c)(2) of the Copyright Act, provides:

> In a case where the copyright owner sustains the burden of proving,
> and the court finds that infringement was committed willfully, the
> court in its discretion may increase the award of statutory damages
> to a sum of not more than $100,000. In a case where the infringer
> sustains the burden of proving, and the court finds, that such
> infringer was not aware and had no reason to believe that his or her
> acts constituted an infringement of copyright, the court in its
> discretion may reduce the award of statutory damages to a sum of
> not less than $200.

17 U.S.C. § 540(c)(2). It should be noted that plaintiffs contend that they are entitled to an award

of $150,000 per infringing title. However, while Section 504(c) was amended in 1999 to

increase the limits on the amount that can be awarded in cases of willful infringement from

$100,000 to $150,000, this action was brought prior to the effective date of the 1999 amendment.

See Digital Theft Deterrence & Copyright Damages Improvement Act of 1999, Pub. L. No.

106-160, § 2, 113 Stat. 1774 (1999). The amendment makes it clear that the $150,000 maximum

under Section 504(c) applies only to actions brought on or after December 9, 1999. Id. Thus, the

$100,000 limit set out in the prior 1988 amendment to Section 504(c) applies in this case. See

Berne Convention Implementation Act of 1988, Pub. L. No. 100-568, § 10, 102 Stat. 2853

(1988).

   In determining whether a defendant has acted willfully for purposes of this section, courts

have held that there is no need to find that the infringer acted maliciously. See Fitzgerald Publ'g

Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1115 (2d Cir. 1986), aff'd, 862 F.2d 304 (2d Cir.

1988). Rather, it is sufficient to find that the defendant had either actual or constructive

knowledge that his actions constituted an infringement. See id.; see also Island Software &

Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257 (2d Cir. 2005) (holding that willful blindness to copyright holder's rights was sufficient to prove willfulness); Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995) (stating that constructive knowledge or reckless disregard is sufficient to demonstrate willfulness, and may be inferred from the defendant's conduct); Twin Peaks Prods., Inc. v. Publ'ns Int'l, Inc., 996 F.2d at 1382 (stating that "[t]he standard is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility"); Engel v. Wild Oats, Inc., 644 F. Supp. at 1091–92 (finding willfulness where an art director reprinted a photograph from a copyrighted book).

It is the plaintiffs' burden to show that defendants' infringement was willful. See Copyrights Act, H.R. Rep. 94-1476, at 161 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5779 (stating that "the burden of proving willfulness rests on the copyright owner"). See also Wow & Flutter Music, Hideout Records & Distribs., Inc. v. Len's Tom Jones Tavern, Inc., 606 F. Supp. 554, 556 (W.D.N.Y. 1985) (stating that "this burden can be met by showing that defendants should have known their conduct was infringing or acted in reckless disregard of plaintiffs' rights"). Moreover, where there is evidence of a past relationship between plaintiffs and defendants, courts have inferred defendants' knowledge of the copyright and concluded that the conduct was willful. See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Inc., 996 F.2d at 1382 (finding willfulness where defendant acknowledged that it knew of the copyrights, and continued publication after receiving a specific warning from plaintiff, even though defendant had a good faith belief that its actions were lawful); Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (drawing an inference of willfulness from defendant's failure to

11

appear and defend the action); see also Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332

(9th Cir. 1990) (finding knowing and willful infringement where defendant repeatedly failed to

account for and pay royalties, and continued to manufacture and distributed copyrighted material

even after receiving notice of termination of contract), cert. denied, 498 U.S. 1109 (1991).

In support of their motion for summary judgment, plaintiffs have presented clear evidence

that defendants acted willfully. With respect to the compilations "Welcome '99" and "Main

Hoon Amitabh," it is clear from the Distribution Agreement that defendants were not authorized

to produce compilations of Eros' films combined with other producers' films without first

obtaining approval from Eros. As further evidence of their willful infringement, defendants

manufactured and produced copies of Eros' films using their own DEI labels and mark. With

respect to "Hote Hote," not only have defendants never denied distributing "Hote Hote" with DEI

labels and marks, but they willfully ignored warnings from Eros' counsel that they were

distributing "Hote Hote" illegally. (See, e.g., Poppe Decl. ¶ 15).[13] Indeed, they continued to

distribute the film during the pendency of the motion for preliminary injunction.

In connection with this inquest, defendant Bisla,[14] proceeding pro se, has presented no

evidence, other than arguments rejected by the Court in connection with the motion for summary

judgment, to even suggest that he was an innocent infringer of Eros' copyrights in the

compilations "Welcome '99" and "Main Hoon Amitabh." Similarly, with respect to "Hote

---

[13] Citations to "Poppe Decl." refer to the declaration of William M. Poppe, dated May 30, 2002, submitted in support of plaintiffs' motion for summary judgment, statutory damages, and attorneys' fees against the Digital defendants regarding "Hote Hote."

[14] Although plaintiffs' motion seeks damages against all three Digital defendants, only Harwinder Bisla has filed any papers in response to the plaintiffs' damages requests. Both DEI and Sandish Mann have defaulted in connection with the inquest order.

Hote," Mr. Bisla does not deny that DEI manufactured or distributed copies of "Hote Hote."
Rather, he contends that he is not a willful infringer because DEI acquired the rights to "Hote
Hote" directly from the producer who represented to DEI that the DVD rights to "Hote Hote"
were not sold to Eros. (Bisla Aff. ¶¶ 13–14). This was an argument raised and rejected by the
Court in connection with the prior motion for summary judgment. However, Mr. Bisla seeks to
reopen the motion for summary judgment, arguing that judgment should not be entered against
him without first hearing the testimony of the producer and the producer's attorney. (Id. ¶ 13).
However, apart from his own statements, Mr. Bisla has submitted no affidavits from either the
producer or the producer's attorney to rebut the valid copyright held by Eros in "Hote Hote."
Nor has Mr. Bisla indicated that he or anyone else has attempted to challenge the validity of the
registration either through application to the Copyright Office or through any other action.

In disputes involving competing claims of copyright ownership as between a copyright
holder and its licensee, 17 U.S.C. § 204 requires proof of transfer of the copyright ownership. 17
U.S.C. § 204(a) (1976). However, the courts have made it clear that where "the copyright holder
appears to have no dispute with its licensee . . . it would be anomalous to permit a third party
infringer to invoke this provision against the licensee." Eden Toys, Inc. v. Florelee Underground
Co., Inc., 697 F.2d at 36; accord Maguson v. Video Yesteryear, 85 F.3d at 1428 (noting that "the
purpose of the requirement that a transfer be in writing . . . was to protect the copyright holder
from persons fraudulently claiming to hold licenses"); see also Kenbrooke Fabrics, Inc. v. Soho
Fashions, Inc., 690 F. Supp. 298, 301 (S.D.N.Y. 1988) (discussing Eden Toys' holding that the
proof of transfer requirement is satisfied by the copyright owner's later execution of a writing
confirming the agreement).

13

Not only is it unclear that defendants have any standing to challenge the plaintiffs' copyright registration, but defendants have also failed to present any evidence, beyond unsupported allegations and hearsay, sufficient to question the validity of the copyright registrations submitted by Eros. There has been no credible evidence presented to suggest that the copyright registrations for the film at issue were obtained through fraud. Defendants' claims are not supported by copyright registration documents, affidavits regarding the validity of any competing claim of copyright ownership, or sworn testimony regarding the validity of the competing copyright claims. The general standard for rebutting the presumption of validity which attaches to a certificate of registration is that "the presumption of validity may be rebutted 'where other evidence in the record casts doubt on the question.'" Fonar Corp v. Domenick, 105 F.3d at 104 (quoting Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 908 (2d Cir. 1980) (emphasis added). In particular, the presumption of validity may be rebutted with substantiated showings that the copyright is invalid because of fraud or intentional misrepresentation, Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d at 456 (holding that the "knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action"), because of evidence that the work is "entirely unoriginal or that it has been copied from another program," Fonar Corp v. Domenick, 105 F.3d at 104, or because the work is a non-copyrightable article. Carol Barnhart Inc. v. Economy Cover Corp., 773 F.2d at 414.

Thus, even if the Court were to reopen the issue of summary judgment as it pertains to the film "Hote Hote," Rule 56(e) of the Federal Rules of Civil Procedure "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation

or denials of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment, as the relevant question is whether there is a "genuine issue of material fact." Id. at 247–48. Since defendant has the burden to prove the invalidity of a copyright registration, Fonar Corp. v. Domenick, 105 F.3d at 104 (citing Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d at 192), the Court finds that defendants here have failed to present any evidence to support their claims that plaintiffs' copyright in "Hote Hote" is invalid, nor have they presented any evidence to demonstrate that Digital's reproduction of "Hote Hote" was authorized by Eros.[15]

By contrast, plaintiffs have conclusively established that they hold a valid Certificate of Copyright Registration in the film "Hote Hote" and that they never assigned or transferred their exclusive DVD rights in "Hote Hote" to anyone, including the Digital defendants. (See Shahparast Aff. #5 ¶ 15). Indeed, in a separate action filed in Superior Court, Bergen County, New Jersey by Ashtosh Bajpay against Eros relating to the distribution rights to "Hote Hote" in the United States and Canada, Eros' counsel discovered that DEI had entered into an agreement on September 17, 1999, to pay Bajpay $10,000.00 for the DVD distribution rights to "Hote Hote." (Id. ¶ 7). Counsel for Eros thereafter contacted DEI's counsel to inform him that Eros owned the exclusive rights to "Hote Hote," and sent him correspondence regarding "Hote Hote,"

---

[15] In this Court's earlier Report and Recommendation dated November 1, 2001, this Court rejected defendant Mann and Bisla's argument that they had an absolute defense to any charge of infringement because they had a license through the Distribution Agreement, and that this was essentially a contract dispute which, under the terms of the Agreement was subject to the exclusive jurisdiction of the English courts. (Nov. 2001 Rept. at 40). In granting summary judgment in favor of Eros, this Court also rejected the claim that the court lacked personal jurisdiction over defendants. (Id. at 64–65).

15

including complete documentation of Eros' copyright ownership in the film. (Poppe. Aff. ¶¶ 8–11, Ex. B).[16]

Plaintiffs allege that despite being provided with the information establishing Eros' right to the film "Hote Hote," the Digital defendants continued to distribute "Hote Hote" during the pendency of the motion for preliminary injunction in this action. (Shahparast Aff. #3 ¶¶ 15–16). This evidence coupled with DEI's advertisements for "Hote Hote" on its web page in September 2000, and plaintiffs' purchase of DEI's infringing version of "Hote Hote" from the retail defendants clearly demonstrates that defendants actually copied Eros' work and did so with the knowledge of Eros' claim of ownership.

Thus, this Court finds that there are no material issues of fact in dispute that would warrant reopening the motion for summary judgment. The Court further finds that plaintiffs have met their burden to establish that in manufacturing and distributing "Hote Hote" with the DEI label, defendants acted with knowledge that their actions constituted an infringement. Thus, they can be considered willful violators for purposes of 17 U.S.C. § 502(c)(2).

This does not complete the Court's inquiry, because a determination of willfulness does not mandate an award of the maximum statutory amount. The legislative history of the Copyright Act demonstrates that the damages provided in Section 504, a "cornerstone . . . of the bill as a whole," are intended to "give the courts specific unambiguous directions concerning monetary awards" while also "provid[ing] the courts with reasonable latitude to adjust recovery to the circumstances of the case." Copyrights Act, H.R. Rep. 94-1476, at 161. This Court's task,

---

[16] Citations to "Poppe Aff." refers to the affirmation of William M. Poppe, dated September 5, 2000, submitted in support of plaintiffs' application to amend their complaint and to enjoin the Digital defendants from distributing "Hote Hote."

pursuant to Section 502(c)(1), is to determine a "just" award, in which "the court's 'discretion and sense of justice are controlling' subject only to the specific statutory limits." Engel v. Wild Oats, Inc., 644 F. Supp. at 1091 (quoting F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 232 (1952)); see also 145 Cong. Rec. S15228-01, S15229, 1999 WL 1091963 (December 3, 1999) (statement of Sen. Leahy) (stating that the range of damages gives the court "discretion to impose damages within these statutory ranges at just and appropriate levels"). In Engel, the court awarded plaintiff $20,000 for a willful infringement of her rights in a photograph, noting that this amount served simultaneously to compensate plaintiff for her losses and to act as a specific and general deterrent. Id.; see also Wow & Flutter Music, Hideout Records & Distribs., Inc. v. Len's Tom Jones Tavern, 606 F. Supp. at 557 (awarding $750 per willful infringement to owners of a copyright in a musical composition); Fallaci v. New Gazette Literary Corp., 568 F. Supp. at 1173 (awarding maximum statutory damages of $10,000 for willful infringement of a copyrighted newspaper article).

The factors considered by the courts in determining enhanced awards of statutory damages reflect the dual compensatory and deterrent nature of such awards. Lottie Joplin Thomas Trust v. Crown Publishers, Inc., 592 F.2d 651, 657 (2d Cir. 1978) (citing F. W. Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 233 (1952) (noting that statutory damages are "designed to discourage wrongful conduct")). With respect to the compensatory aspect of statutory awards, courts consider the infringer's profits and expenses saved, plaintiff's lost revenues, the fair market value of the rights infringed, and the deterrent effect on other individuals. See Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d at 1117 (discussing these factors); see also Fallaci v. New Gazette Literary Corp., 568 F. Supp. at 1174 (awarding plaintiff

17

twice the value of the infringed right as a deterrent to future infringers); 145 Cong. Rec. S15228-01, S15229 (noting that "harm caused, ill-gotten profits obtained and the gravity of the offense" are factors to be considered in determining the size of the award). With respect to the deterrent nature of statutory awards, courts consider the willfulness of the infringement as well as the potential that the award would have a deterrent effect on the particular defendant in the case. See Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d at 1117; see also Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc., 602 F. Supp. 151, 156 (S.D.N.Y. 1984) (awarding maximum statutory damages to deter defendant, one of the "'bad boys' of the textile industry," who had been involved in multiple similar lawsuits); RSO Records, Inc. v. Peri, 596 F. Supp. 849, 862–63 (S.D.N.Y. 1984) (awarding maximum statutory damages per infringement because of the estimated actual damages combined with the "large-scale and willful infringing activity," for a total award of $1,450,000); Lauratex Textile Corp. v. Alton Knitting Mills Inc., 517 F. Supp. 900, 903 (S.D.N.Y. 1981) (awarding maximum statutory amount in order to deter defendant who had been sued for copyright infringement ten times in the past five years and where defendant "made a practice of copying designs of others").

Here, plaintiffs seek an award of the maximum amount of statutory damages per infringing work. (Poppe Decl. ¶ 19). In support of their request for statutory damages, plaintiffs indicate that actual damages are difficult to assess because defendants' infringing actions have been ongoing for many years, both prior to and during the pendency of this action, and as a consequence they cannot easily ascertain the number of unauthorized or counterfeit copies of Eros' films that were distributed by defendants prior to the issuance of the injunction. (Poppe

Decl. ¶¶ 10–11). Indeed, according to Eros' former counsel,[17] following the decision in the London High Court awarding Eros $5,400,000 for defendants' breach of the Distribution Agreement, Mr. Mann threatened to "'ruin Eros'" by recreating and selling multiple counterfeit copies of Eros' DVDs. (Id. ¶ 15(f); Id. Ex. C).

According to the Poppe Declaration and the Declaration of Kapil Sethi, attached thereto, the Digital defendants continued to manufacture and "actually accelerated their release of Eros titles in DVD format at prices substantially below wholesale rivals." (Id. ¶ 15(g); Sethi Decl. ¶¶ 22, 23). Based on that information, plaintiffs obtained a search warrant for the Digital defendants' premises, which was executed on May 16, 2002 in California. (Poppe Decl. ¶ 15(h)). During the course of that search, plaintiffs recovered various materials demonstrating DEI's ongoing piracy. (Id.)

In seeking damages, plaintiffs request compensation for each Eros title or "work" counterfeited by defendants or for each title or work incorporated into an unauthorized compilation. (Id. ¶ 16). Specifically, plaintiffs seek damages based on the 18 Eros films which were included in the two unauthorized compilations, "Main Hoon Amitabh" and "Welcome '99,"[18] as well as damages based on the distribution of "Hote Hote:" a total of 19 works. (Id. ¶

---

[17] On August 15, 2002, after the inquest papers had been filed, the firm of Poppe & Bhouraskar was replaced as plaintiffs' counsel by the firm of Bazerman & Drangel.

[18] The majority of these films were listed in Table A of this Court's earlier Report and Recommendation dated November 1, 2001, with the exception of "Ram Balram," for which plaintiffs submitted proof of copyright in Schedule B of Pls.' Motion for Summary Judgment, filed January 5, 2001. Three of the films incorporated into the song compilations were listed in Table B of the November 2001 Report because at the time of the Report, these three films were among the films for which plaintiffs had submitted Performing Arts Applications but for which they had not yet received the Certificates of Copyright Registration. Of these three films, plaintiffs subsequently presented a Certificate of Copyright Registration for one of them, the

16(c)).  Plaintiffs contend that given the willfulness of defendants and their continued actions in violation of the injunction, the maximum statutory amount is warranted not only to discourage future violations by defendants and others in the industry, but so that defendants do not consider these damages as simply a "cost of doing business."  (Id. ¶ 20).

In response to plaintiffs' motion for damages, Mr. Bisla argues that the Court's determination should take into account the fact that the English Court in the London action brought by Eros against the Digital defendants has already entered judgment against Mr. Bisla and the other Digital defendants in the amount of approximately $5,000,000.  (Bisla Aff. ¶ 5). That judgment, according to Mr. Bisla, includes damages for all of the film titles except for "Hote Hote."  (Id.)  Thus, Mr. Bisla argues that the Court should not award damages for any of the film titles used to create the "Welcome '99" and "Main Hoon Amitabh" compilations.  (Id.) Nor should they receive any damages for the song compilations at all because, according to Mr. Bisla, the songs were taken from film titles legitimately acquired by DEI under the Agreement with Eros.  (Id. ¶ 6).  Finally, Mr. Bisla argues that he "did not take any action for personal profit or gain from these film titles." (Id. ¶ 16).  He claims that he did "not receive[ ] any of the proceeds from the sale of these films. [His] participation with these film titles was minimal and was limited to or part of Digital's normal business operations."  (Id.)

To the extent that Mr. Bisla argues that the compilations were made legitimately based on the Distribution Agreement, this Court has already rejected that argument in its November 1, 2001 Report and Recommendation, where it found that defendants breached the Agreement when

---

film, "Ghulam."  (See May 2002 Rept., Table SA).  In addition, there were two films in "Main Hoon Amitabh" for which plaintiffs submitted Performing Arts Applications but did not submit Certificates of Copyright Registration: "Sharaabi" and "Mr. Natwarlal."  (Schedule A).

they created these two compilations - - "Welcome '99" and "Main Hoon Amitabh." (Nov. 2001 Rept. at 65–69). Moreover, to the extent that Mr. Bisla argues that damages have been awarded based on defendants' breach of the Agreement, the violations of the Agreement that resulted in those damages are separate from the damages available under the copyright laws. (Id.)

Accordingly, having considered all of the evidence currently before this Court on this motion for damages, as well as on the motions for preliminary injunction and summary judgment, this Court respectfully recommends that damages in the maximum statutory amount of $100,000 per infringed work be granted. The Court finds that the maximum amount authorized by statute is warranted in this case because of the extensive nature of defendants' counterfeiting activities, the sheer number of counterfeit films and copies of counterfeit films that have been distributed by the Digital defendants and the blatant nature of their copyrighting activities which included placing their own labels on Eros' products. This evidence convinces this Court that substantial damage has been done to Eros, not only in terms of lost profits, but also in loss of name recognition and good will as well.

Perhaps even more important, in this Court's analysis, is the fact that there is a need for a significant deterrent in this case. Based on the evidence presented by Eros, which has not been refuted, it appears that the Digital defendants continued to violate the plaintiffs' copyrights while the motions in this case were pending and even after the injunction issued. Given their knowing and willful violation of Eros' copyrights, this Court respectfully recommends an award in the maximum amount of $100,000 per title for a total of $1,900,000.

B. Attorneys' Fees and Costs

Finally, plaintiffs seek an award of $324,847.75 in attorney's fees and $9,104.17 in costs, based on their expenses incurred in prosecuting this civil action. (Poppe Decl. ¶ 21).

In the context of a claim of copyright infringement, the Court, pursuant to Section 505 of Title 17 of the United States Code, may "in its discretion" award "the recovery of full costs by or against the party . . . [and] may also award a reasonable attorneys' fee to the prevailing party as part of the costs." In order for a plaintiff to qualify as a "prevailing party" under the statute, the plaintiff must succeed on a significant issue in the litigation that achieves some benefit sought in instigating the lawsuit. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Ruggiero v. Krzeminski, 928 F.2d 558, 564 (2d Cir. 1991) (achieving only partial success in lawsuit may still qualify one as prevailing party). Although an award of fees is within the court's discretion, see Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994) (noting that the word "may" in the statute "clearly connotes discretion"), prevailing plaintiffs in copyright cases are no longer automatically awarded fees. See Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d at 1010. However, fees are generally awarded to a prevailing plaintiff because the policies behind the Act are designed to encourage suits aimed at redressing infringements. See Roth v. Pritikin, 787 F.2d 54, 57 (2d Cir. 1986). A district court's award of attorneys' fees and costs will be reversed only if the court abused its discretion or applied the incorrect legal standard. See Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d at 1012; Twin Peaks Productions, Inc. v. Publications International, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993) (upholding fee award as "proper," despite finding it "somewhat unusual").

In determining whether to award attorneys' fees, the Supreme Court has suggested a

number of nonexclusive factors that courts should take into consideration, including the frivolousness of the claim, the motivation of the parties, the objective unreasonableness of the factual and legal aspects of the case, the need for compensation, and the need for deterrence. Fogarty v. Fantasy, Inc., 510 U.S. at 535 n.19. In awarding reasonable fees, courts in this circuit have also considered factors such as the amount of time and work spent on the case, the skill involved, see, e.g., Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc., 602 F. Supp. at 156, the size of the fee in proportion to the award, see, e.g., Fitzgerald Publ'g Co. v. Baylor Publ'g Co., Inc., 807 F.2d at 1119, the length of history preceding the action, see Wow & Flutter Music, Hideout Records & Distribs., Inc. v. Len's Tom Jones Tavern, Inc., 606 F. Supp. at 558, the willfulness of the defendant, see, e.g., id.; Engel v. Wild Oats, Inc., 644 F. Supp. at 1093, and whether the requested amount is reasonable with respect to time, the amount of work, result achieved, and local billing rates. Id.

Taking into consideration all of the pertinent factors, attorneys' fees are appropriate in this case under the Copyright Act. Defendants' clear infringement illustrates that their position was objectively unreasonable. See Screenlife Establishment v. Tower Video, 868 F. Supp. 47, 53 (S.D.N.Y. 1994) (awarding fees where the loser's position was objectively unreasonable). Moreover, while the fee is relatively large, this is due in part to the fact that plaintiffs were required to pursue not only a motion for preliminary injunction, including an extensive hearing, but were also forced to file two motions for summary judgment, as well as a motion to amend, and to defend against defendants' cross-motions to dismiss. Despite warnings from plaintiffs, defendants continued their infringing activities, even in the face of the preliminary injunction proceeding, and, according to the Poppe Declaration, refused several offers to negotiate a

23

settlement of these claims, which would have reduced the cost of litigation. (Poppe Decl. ¶¶ 22, 24). Thus, the Court finds that an award of attorneys' fees is an appropriate compensatory measure.

Counsel has submitted a request for $324,847.75 in fees and $9,104.17 in costs. To calculate a reasonable attorneys' fee, courts first determine a "lodestar" figure by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. at 433; see also Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997). Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). "While there is a strong presumption that this amount represents a reasonable fee," Cowan v. Ernest Codelia, P.C., 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), this resulting "lodestar" figure may be adjusted upward or downward based on other considerations. See Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999); see also Independent Living Aids, Inc. v. Maxi-Aids, Inc., 25 F. Supp. 2d 127 (E.D.N.Y. 1998) (applying this method in a Section 505 case).

Turning first to the hourly rate charged, the rate to be used is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Luciano v. Olsten Corp., 109 F.3d at 115 (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). In his Declaration, Mr. Poppe has indicated that counsels' hourly rates range from $325 to $375 per hour for lead counsel, William M. Poppe, Esq., and $250 per hour for Ms. Bhouraskar. (Id. ¶ 21). In determining the reasonableness of counsel's rates, the Court may rely on its knowledge of other fee applications pending before it. See Assoc. for Retarded Citizens of Conn., Inc. v. Thorne, 68 F.3d 547, 554 (2d Cir. 1995) (holding that a court may

"'rely in part on [its] own knowledge of private firm hourly rates in the community'") (quoting Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)). See also M.L. v. Bd. of Ed. of City of N.Y., 2003 WL 1057476, at *2 (S.D.N.Y. 2003) (finding reasonable $375 per hour for lead attorney and $250 to $390 per hour for senior attorneys).

As for the hours expended by counsel on this matter, it is well-settled in the Second Circuit that where a federal statute provides an exception to the general rule that parties bear their own legal fees and costs, the party seeking an award of fees must support its application with contemporaneous time records. See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147–48 (2d Cir. 1983) (announcing that in all future cases in the Second Circuit, "contemporaneous time records are a prerequisite for attorney's fees"). These contemporaneous records kept by attorneys "should specify, for each attorney, the date, the hours expended, and the nature of the work done." Id.; see also DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1044 (E.D.N.Y. 1993) (reducing a fee award where the records were not sufficiently detailed and where there was a duplication of effort). Here, the records submitted by plaintiffs' counsel meet with the requisite specificity.

However, at the time the fee application was submitted, the case against the retail store defendants was still pending and had not been settled. Many of the items included in the plaintiffs' current request for fees are more properly attributed to work performed in connection with the pursuit of the retail store defendants. It would not be fair to assess those fees against the

Digital defendants. Accordingly, this Court reviewed the billing records of plaintiffs' counsel[19] and determined that, to the best of the Court's judgment, approximately 19% of the time appeared to have been expended solely in connection with the retail store defendants. These hours were eliminated.

The Court also determined that approximately 50% of the work was expended solely in regard to the Digital defendants. The remaining approximately 30% of the time billed was expended on work that appears to have been done in connection with all defendants. The Court finds that it is appropriate for the Digital defendants to pay for half of this time.[20] Thus, this Court finds that plaintiffs' counsel is entitled to reimbursement from the Digital defendants for 65% of the attorneys' fees in this case.[21] When computed at the rates set forth in the Poppe Declaration, the total amount due to plaintiffs' counsel is $211,151.04 in fees.

Costs, also requested by plaintiffs, are awarded as a matter of discretion for copyright violations. See ARP Films, Inc. v. Marvel Entm't Group, Inc., 952 F.2d 643, 651 (2d Cir. 1991) (citing Lerman v. Flynt Distrib. Co., 789 F.2d 164, 166 (2d Cir.), cert. denied, 479 U.S. 932 (1986) (holding that "the decision to award costs is committed to the sound discretion of the trial court")); see also Cameron Indus. Inc. v. Albert Nipon Co., Inc., 630 F. Supp 1293, 1296

---

[19] The original fee request sought compensation for 1074.12 hours. While this might appear excessive at first glance, the fee request was justified by the need to conduct discovery, to prepare for and present witnesses at the preliminary injunction hearing, and to file and respond to multiple actions.

[20] The Court determined that approximately 1% of the billing entries appear to be for work that was either not performed in connection with this litigation or that is not generally subject to reimbursement under these circumstances. Therefore, this amount was eliminated.

[21] This figure was arrived at by adding the 50% expended solely on Digital matters, to half of the 30% expended on matters dealing with all defendants.

(S.D.N.Y. 1986) (noting that awards of costs and attorney's fees are discretionary under § 505 of the Copyright Act). While this Court feels that plaintiffs are entitled to costs, there is a similar problem with respect to plaintiffs' request for costs and disbursements as there is with plaintiffs' request for fees. Although a description of counsel's disbursements in the amount of $9,104.17 is set forth in counsel's statement of fees and this amount appears to be reasonable, the costs include costs related solely to the retail store defendants. Having eliminated costs which seem to relate to those other defendants, using a similar method as with the calculation of attorneys' fees, this Court finds that plaintiff is entitled to 67% of the costs they request. This Court therefore recommends that plaintiffs be reimbursed in the amount of $6,099.79 for costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
      October 2/, 2005

                                   Cheryl L. Pollak
                                   United States Magistrate Judge